UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| CARSON N. MURDY, | \* | CIV 07-1008 |
| Plaintiff, | \* | |
| -vs- | \* | OPINION AND ORDER |
| DIRK KEMPTHORNE, Secretary, U.S. Department of Interior, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## INTRODUCTION

Plaintiff filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that the defendant, through his immediate supervisor, engaged in a course of conduct towards him constituting discrimination, hostile work environment, and retaliation.

Defendant filed a motion for summary judgment, contending this court lacks jurisdiction because plaintiff 1) failed to exhaust his administrative remedies, 2) pursued an administrative remedy from which there is no appeal to the district court, and 3) settled a portion of his claim. Defendant also contends summary judgment is appropriate on the merits because plaintiff cannot establish 1) a causal relationship between his protected conduct and the alleged retaliatory action, 2) that he was subject to an adverse employment action, and 3) that he was subject to disparate treatment.

## SUMMARY JUDGMENT CONSIDERATIONS

The summary judgment standard is well known. Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Whitley v. Peer Review Systems, Inc., 221 F.3d 1053, 1055 (8th Cir. 2000) (internal citations omitted). The party opposing summary judgment must respond to the moving party's statement of facts "with a separately numbered response and appropriate citations to the record." D.S.D. LR 56.1(B). "In order to establish a genuine issue of material fact," the non-moving party, the plaintiff here, can "not 'simply rest upon the pleadings'" nor can "he rely on conclusory statements in his affidavit." Jeseritz v. Potter, 282 F.3d 542, 545 (8th Cir. 2002) (quoting Mathews v. Trilogy Communications, Inc., 143 F.3d 1160, 1164 (8th Cir.1998)). Unsupported self-serving allegations are insufficient to establish a genuine issue of material fact. Smith v. International Paper Co., 523 F.3d 845,848 (8th Cir. 2008). Rather, plaintiff must "point to evidence in the record sufficient to raise a genuine issue for trial." Jeseritz v. Potter, 282 F.3dd at 546 (quoting Mathews, 143 F3d. at 1164).

## FACTS

The court must determine the facts in the light most favorable to the plaintiff and the court will do that. Plaintiff has been employed as an archeologist by the United States Department of Interior, Bureau of Indian Affairs ("BIA"), in the Aberdeen, South Dakota, Area Office since 1992. In 2004, the plaintiff's position was assigned to the newly created Division of Environment, Safety, and Cultural Resources Management ("DESCRM") as part of a BIA reorganization. Paul Hofmann ("Hofmann") became the DESCRM division chief and, therefore, plaintiff's supervisor, in October 2004.

Plaintiff contends that, from the very beginning, Hofmann "engaged in a course of conduct in which he berated, humiliated and embarrassed plaintiff on a continuing and on going basis and did so in the presence of other employees, many of whom were similarly treated."

In 2004 and continuing into 2005, Hofmann became aware that the BIA was found to have violated the National Historic Preservation Act in conjunction with a road construction project on the Crow Creek Indian Reservation in South Dakota. Hofmann, having apparently

determined that such violation was the fault of the plaintiff, contacted Carl Renville, Jr. ("Renville"), BIA Supervisory Human Resources Specialist from Portland, Oregon, regarding possible disciplinary action against plaintiff. Hofmann prepared a draft order for a proposed removal of plaintiff from his position. That draft was sent to Renville on June 13, 2005. Hofmann and Renville worked on the notice of removal with the advice of counsel throughout the following year. That notice of removal for some unknown reason was never issued to plaintiff.

On August 16, 2005, plaintiff was involved in an accident while operating a government vehicle. He was aware that he hit a dog but he did not report the accident. When the vehicle was checked out by another employee, damage to the vehicle was noted. Thereafter, on September 15, 2005, plaintiff completed a motor vehicle accident report. The right front plastic bumper skirt was broken off, the bumper was dented and displaced, the parking light was displaced, and the plastic grill was broken, all such damage requiring nearly $1,000 in repairs. Plaintiff contends that he did not know that the vehicle was damaged when he returned the vehicle. He does not say whether he looked at the front of the vehicle after striking the dog. BIA policy requires that "BIA Motor Vehicle Operators must immediately report . . . all incidents involving a Government-owned or leased motor vehicle . . . that occur during the performance of their official duties." The policy is not limited to reporting only incidents causing obvious damage. BIA policy further provides that "failure . . . to report such incidents to the supervisor as soon as possible after the occurrence, but no later than the next business day, may result in disciplinary or other adverse action."

On September 14, 2005, Hofmann learned that plaintiff had signed transfer documents beginning in 1996 which acknowledged receipt of human remains that were eventually stored in the basement of the federal building in Aberdeen and elsewhere, all without complying with the Native American Graves Protection and Repatriation Act ("NAGPRA").

In September, 2005, Hofmann contacted Renville, inquiring whether additional charges relating to treatment of human remains and failure to report an accident should be included in the notice of removal as to plaintiff.

Hofmann completed a performance review on plaintiff on October 3, 2005, wherein plaintiff was rated as "unsatisfactory."

The storage of human remains became known and, in November 2005, the Aberdeen BIA agency was accused by at least one tribe of concealing information as to those remains.

In January 2006, the BIA's Aberdeen office computer files were transferred from an old server to a new one. Access rights, however, were not migrated and, therefore, employees had access to and became aware of an "executive" file kept by Hofmann on the employees he supervised. Prior to making Hofmann aware of the unauthorized access, plaintiff and other employees copied the Hofmann files. The file as to plaintiff included a file labeled "Notice of Removal."

In February 2006, Hofmann counseled both plaintiff and a female archeologist, Victoria Barr, encouraging them to "spruce up" their appearances. He told plaintiff to "take his cue" from the other men in the office and told Barr to "take her cue" from the other women in the office. Hofmann was following a directive from the Aberdeen Area Director.

At some point, Hofmann began making modifications to the plaintiff's and Barr's workspaces. The modifications increased file storage but decreased desk work space.

Barr contacted an EEO counselor in April 2006, alleging gender based discrimination and reprisal. Plaintiff was interviewed by the EEO counselor regarding Barr's complaints during the next week. Plaintiff claims, without citation to the record, that after he testified on behalf of Barr (he does not state when that occurred), Hofmann's conduct "became more pronounced and increased."

Plaintiff contacted the EEO counselor on June 12, 2006, complaining, in part, about Hofmann's comments concerning his appearance, comments contained in the "executive" file, and Hofmann's actions in altering his work space. Plaintiff claims, again without citation to the record, that Hofmann's conduct "became even worse" after he filed his EEO charge against Hofmann.

On November 7, 2006, plaintiff filed a formal EEO complaint. The EEOC form contains boxes for a party to check to show the basis for the EEOC charge. This includes boxes for race, color, religion, sex, national origin, age, mental and physical handicap, and reprisal. Plaintiff

checked only the box for reprisal. The EEOC acknowledged receipt of the complaint and requested additional information. Plaintiff denies having received the request. No further agency action was taken.

Hofmann completed a performance review of plaintiff on November 28, 2006, wherein plaintiff was rated as "minimally successful." The Area Director reviewed and approved the appraisal.

In May, 2007, Hofmann began investigating DESCRM employees' misuse of government issued cell phones. Plaintiff became aware of the investigation because Hofmann requested that plaintiff identify plaintiff's frequently called numbers. Hofmann determined that, over a two year period, plaintiff had made 171 long distance calls to his son in Omaha, Nebraska, and at least 741 local calls to his wife, along with many other personal calls exceeding 1,000 total personal calls. Hofmann thereafter called Renville about disciplining plaintiff.

Plaintiff filed this action on May 31, 2007, alleging that the defendant, through his immediate supervisor, engaged in a course of conduct towards him constituting discrimination, hostile work environment, and retaliation. Nowhere in the complaint does plaintiff set forth the basis of his discrimination claim (*i.e.*, race, gender, etc.).

On July 16, 2007, Hofmann gave plaintiff written notice of a proposal to suspend him based upon 1) failure to report an incident in a government-leased vehicle, 2) carelessness in the performance of duties related to the NAGPRA, and 3) misuse of the government cell phone assigned to plaintiff. Plaintiff responded in writing to the disciplinary charges on July 27, 2007. On October 24, 2007, the acting area director notified plaintiff in writing of the decision to suspend him for 45 calendar days without pay based upon his determination that the three charges were supported by a preponderance of the evidence.

Plaintiff, with the assistance of counsel, filed an appeal from the suspension with the Merit Systems Protection Board ("MSPB"). Plaintiff set forth in his appeal that "the action taken is untimely, prejudicial and retaliatory, based upon inaccurate information." He further stated that he believed "this action has subjected me to age discrimination, as my entire service record was reviewed to provide material for the allegations in the proposal to suspend." In January 2008, plaintiff and the BIA settled "all issues and controversies now pending between them or

otherwise arising out of the facts and circumstances relating to Appellant's appeal of his suspension." Specifically excluded from the waiver and release contained in the settlement agreement was the "litigation currently pending as Civ. 07-1008 in the U.S. District Court for the District of South Dakota, Northern Division, titled Carson N. Murdy v. Dirk Kempthorne, Secretary, U.S. Department of the Interior." This document was poorly conceived and poorly drafted. Does it allow plaintiff to file an amended complaint adding new allegations? Does it allow plaintiff to recover again for the suspension without pay? Exactly what was settled and what was not? The Court will construe the language in plaintiff's favor in connection with the pending summary judgment motion. With this language in the settlement agreement, the court fails to understand why the defendant would squander the time of the court and plaintiff in somehow attempting to rely on this settlement in the present lawsuit. As a result of the settlement, plaintiff was suspended for only 15 days which, effective May 11, 2009, will be reflected in his personnel records as leave without pay status. All record of any suspension will be expunged at that time.

**I. Exhaustion.**

Title VII of the Civil Rights Act of 1964 gave private sector employees a private cause of action against their employers for employment discrimination. The statute requires employees to comply with certain time restrictions in both exhausting remedies available from the Equal Employment Opportunity Commission (EEOC) and in filing a civil suit in federal district court. *See* 42 U.S.C. § 2000e-5. The Equal Employment Opportunity Act of 1972 expanded Title VII to include federal employees.

"A Title VII plaintiff must exhaust administrative remedies before bringing suit in federal court." Cottrill v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006). Federal regulations require a federal employee who believes that he has been discriminated against to initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The employee must thereafter timely file an administrative charge with the EEOC. 42 U.S.C. § 2000e-5(e). "[F]ailure to exhaust administrative remedies is an affirmative

6

defense that a defendant must prove." Miles v. Bellfontaine Habilitation Center, 481 F.3d 1106, 1107 (8th Cir. 2007).

The Eighth Circuit has held "that a Title VII plaintiff generally does not exhaust [his] administrative remedies unless [he] complains of the discriminatory behavior to the EEOC before filing a lawsuit." Fair v. Norris, 480 F.3d 865, 867 n. 2 (8th Cir. 2007). "Although an EEOC complaint 'need not specifically articulate the precise claim or set forth all the evidence an employee may choose to later present in court,' it must nevertheless 'be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim.'" Id. (quoting Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1123 (8th Cir.2006)).

> The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because "the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." Permitting claims to be brought in court which are outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge.

Cottril v. MFA, Inc., 443 F.3d at 634 (quoting Nichols v. Am. Nat'l Ins. Co., 54 F.3d 886, 887 (8th Cir. 1998)).

Plaintiff contacted an EEO counselor on June 12, 2006, complaining, in part, about Hofmann's comments concerning appearance, comments contained in the "executive" file, and Hofmann's actions in altering plaintiff's work space. He signed a formal EEOC complaint on November 1, 2006, although he contends in his court complaint that he filed it on October 26, 2006 (five days before the date accompanying his signature). The EEOC received his complaint on November 7, 2006.

The EEOC complaint form requires the complainant to check one or more of the listed basis(es) and provide the specific information. The form submitted by plaintiff reflects the following:

```
____ Race _____          ____ Age (Date of Birth)_____
____ Color _____          ____ Physical Handicap _____
____ Religion _____          ____ Mental Handicap _____
____ Sex _____           x   Reprisal
____ National Origin _____          (Date of previous EEO activity)____
```

7

In response to the requirement that he set forth the specifics of his allegation(s) of discrimination, plaintiff complained:

1. In January 2005, Hofmann screamed at plaintiff concerning plaintiff's progress in organizing a training session.

2. In May 2005, Hofmann slammed his hand on a desk and screamed at plaintiff concerning a request to obtain copies of legislation and regulations.

3. In October 2005, Hofmann gave plaintiff an unsatisfactory rating in customer service in his performance review without allowing plaintiff to explain or defend against complaints received.

4. In February 2006, Hofmann requested plaintiff dress more appropriately for the office "and suggested that I take my cue from how two other men in the office dress - a clear case of gender-based discrimination."

5. In April and May 2006, plaintiff became aware that Hofmann had a computer file containing Hofmann's personal notes about plaintiff which file became accessible to anyone with access to a government computer.

6. In May and August 2006, Hofmann reduced plaintiff's work space.

7. In June 2006, Hofmann attempted to downgrade the positions of the two archeologists.

Plaintiff specifically claimed only reprisal in his EEOC complaint, although he did not set forth at all what protected activity he had engaged in for which he was suffering reprisal. He set forth in his statement of specific allegations that statements regarding his manner of dress evidenced discrimination against him on the basis of gender although he did not identify how he was treated differently than a similarly situated female employee. The record is clear that he was not.

Plaintiff's complaint in federal court is equally ambiguous. He sets forth that Hofmann "engaged in discrimination towards Plaintiff and engaged in a course of conduct constituting a hostile work environment and retaliation, and that the constant harassment, beratement and the disclosure on the internal computer network of defamatory material and the ultimate refusal of the Agency to alter or change or cease these activities shows a clear violation of his rights under the law." Plaintiff claims in his complaint that he was singled out for a RIFF (reduction in force)

in 2007 after he filed an EEOC complaint. He does specifically state that he filed formal complaints and "indicated to the Regional (sic) Director that he intended to go forward with a formal EEOC complaint" and that thereafter "Hofmann continued with his discriminatory treatment of Plaintiff and perpetuated and continued the hostile work environment." Plaintiff describes his case in the Form 35 report as a claim "that the Department of Interior discriminated against him on the basis of gender and engaged in a course of conduct constituting hostile work environment."

The specific claims are not well set out in either the EEOC complaint or the district court complaint. He uses the word "discrimination" without any reference to whether he claims to have been discriminated on the basis of gender or race or some other factor. His EEOC complaint was based solely upon retaliation. His district court complaint alleges retaliation. Fed. R. Civ. P. 8(a) requires the plaintiff to set forth in his complaint allegations which give defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002). Even under the liberal pleading requirements of Rule 8, plaintiff has failed to allege a claim for gender discrimination. He does not set forth in the Form 35 report any claim of retaliation but instead sets forth that his claims are for gender discrimination and hostile work environment.

"Generally, '[t]he defendant has the burden of proving the affirmative defense of failure to exhaust administrative remedies.'" Ballard v. Rubin, 284 F.3d 957, 964 n. 6 (8th Cir. 2002) (*quoting* Young v. National Ctr. for Health Servs. Research, 828 F.2d 235, 238 (4th Cir.1987)). The defendant has carried its burden, in part. There is no genuine issue of any material fact as to whether the plaintiff failed to exhaust administrative remedies in part. Summary judgment is thus appropriate as to claims not exhausted. Bailey v. U.S. Postal Service, 208 F.3d 652, 655 (8th Cir. 2000). This includes claims for gender discrimination and age discrimination.

**II. Jurisdiction.**

Defendant contends that the district court lacks jurisdiction over any claim based upon plaintiff's suspension because he appealed that suspension to the MSPB and then settled the appeal. This contention, as previously discussed, is absolutely frivolous.

Plaintiff was given notice of the decision to suspend him for 45 days on October 24, 2007. The basis of the suspension was 1) his failure to report an incident with a government-leased vehicle, 2) carelessness in the performance of his duties related to the NAGPRA, and 3) misuse of a government cell phone. On October 31, 2007, plaintiff appealed that suspension to the MSPB contending, in part, that the decision subjected him to age discrimination. On January 22, 2008, plaintiff entered into a settlement agreement settling "all issues and controversies now pending between them or otherwise arising out of the facts and circumstances relating to Appellant's appeal of his suspension for 45 days." The MSPB thereafter issued a decision dismissing plaintiff's appeal.

Federal employees asserting Title VII discrimination claims generally exhaust their administrative remedies by seeking relief from their agency's EEO department. However, in some cases an employee may appeal an adverse employment action to the MSPB pursuant to 5 U.S.C. § 7701. An employee claiming that the adverse employment action violated Title VII may bring a "mixed case" appeal before the MSPB pursuant to 5 U.S.C. § 7702. "A mixed case may be filed as a complaint with the agency's EEO department or as an appeal to the MSPB, but not both. McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1995). Since Title VII contains an exhaustion of administrative remedies requirement, 42 U.S.C. § 2000e-16(c), plaintiff must satisfy one of the conditions precedent to judicial review as set forth in 5 U.S.C. §§ 7702(a)(3), (b)(5), (c), (d)(2)(A), or (e)(1) in order for the district court to have jurisdiction over the Title VII claim which was exhausted by filing an MSPB appeal. Those conditions precedent are:

> (1) The MSPB issued a decision (§ 7702(a)(3)),
> (2) The employee petitions the EEOC to consider the decision of the MSPB and the EEOC concurs in the decision of the MSPB (§ 7702(b)(5)),
> (3) The MSPB receives the decision of the EEOC and either concurs or reaffirms its initial decision (§ 7702(c)),
> (4) The MSPB reaffirms its initial decision and, as required by law, refers the matter to a special panel which issues a final decision (§ 7702(d)(2)(A)), or
> (5) The MSPB fails to take any action (§ 7702(e)).

As previously discussed, the parties entered into a settlement agreement which was poorly drafted. Excepted from the terms of the agreement were the plaintiff's claims in the present lawsuit, which claims include that the defendant retaliated against the plaintiff and

subjected plaintiff to a hostile work environment. This Court does have jurisdiction over such claims.

### III. Failure to Brief.

The defendant argues that plaintiff failed to address in his responsive brief defendant's arguments set forth in defendant's brief in support of summary judgment. I will ignore any such issue and decide whether plaintiff has made out a prima facie case.

### IV. Prima Facie Case as to Retaliation and Hostile Work Environment.

"Federal law prohibits an employer from discriminating against an employee who 'has opposed any practice' made unlawful by Title VII, or 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing' under the statute." Hervery v. County of Koochiching, 527 F.3d 711, 722 (8th Cir. 2008) (*quoting* 42 U.S.C. § 2000e-3(a), and Barker v. Missouri Dept. of Corrections, 513 F.3d 831, 834 (8th Cir.2008)). Plaintiff has presented no direct evidence or retaliation. We must therefore apply the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Kasper v. Federated Mut. Ins. Co., 425 F.3d 496, 502 (8th Cir. 2005). Therefore, "the plaintiff first must demonstrate a prima facie case of retaliation" to survive summary judgment. *Id*.

A "minimal evidentiary showing satisfies a plaintiff's burden of production" at the *prima facie* stage of this case. Pope v. ESA Services, Inc., 406 F.3d 1001, 1007 (8th Cir. 2005). At this stage, the plaintiff's burden "is not onerous." Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

The United States Supreme Court announced a new standard for determining whether a plaintiff has established a retaliation prima facie case in Burlington N. & Santa Fe R. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). To establish a prima facie case of retaliation, plaintiff must demonstrate that

> (1) he engaged in protected conduct;
> (2) reasonable employees would have found the challenged retaliatory action materially adverse; and
> (3) the materially adverse action was causally linked to the protected conduct.

Higgins v. Gonzales, 481 F.3d 578, 589 (8th Cir. 2007) (*citing* Burlington Northern v. White, 548 U.S. at 68, 126 S.Ct. at 2415). "The plaintiff in a retaliation case must present sufficient evidence for a reasonable jury to conclude that [his] protected conduct was a determinative factor in a materially adverse employment action taken by the employer." Hervey v. County of Koochiching, 527 F.2d at 722.

The United States Supreme Court has explained:

> We speak of material adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace."

Burlington Northern v. White, 548 U.S. at 68, 126 S.Ct. at 2415.

> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm . . . In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"

Burlington Northern v. White, 548 U.S. at 67-68, 126 S.Ct. at 2414-15 (citations omitted). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* at 68, 126 S.Ct. at 2415.

Hofmann became plaintiff's supervisor in October 2004. Plaintiff has stated that, from the beginning, Hofmann "engaged in a course of conduct in which he berated, humiliated and embarrassed plaintiff on a continuing and on going basis and did so in the presence of other employees, many of whom were similarly treated." Hofmann's conduct included screaming at plaintiff and slamming his hand on a desk while screaming at plaintiff. Plaintiff apparently was not dissuaded by Hofmann's conduct from testifying in or after April 2006 concerning his co-worker's EEOC claim. Plaintiff claims (without citation to the record) that, after he did so, Hofmann's conduct "became more pronounced and increased." Apparently even that did not dissuade plaintiff from contacting an EEO counselor on his own behalf on June 12, 2006. Plaintiff contends (again without citation to the record) that Hofmann's conduct "became even worse" after he contacted an EEO counselor. The conduct which formed the basis of plaintiff's retaliation claim as set forth in his EEOC complaint included reducing plaintiff's work space and

attempting to "downgrade" his and his fellow archeologist's positions. The "downgrade" never occurred. Again, not dissuaded by Hofmann's conduct, plaintiff filed a formal EEOC complaint on November 1, 2006.

The Eighth Circuit's opinion in Higgins v. Gonzales is instructive in this case. In that case, a former Assistant United States Attorney complained that her supervisor in the Rapid City, South Dakota, office treated all the AUSA's "very badly" and that her "style as a supervisor was offensive" to all those she supervised and that "she was condescending and criticized 'whatever you had done.'" Higgins v. Gonzales, 481 F.3d at 582. The supervisor also kept a "shadow file" on the plaintiff, Id. at 583, had allegedly recommended that the plaintiff be terminated, Id. at 587, and had been angry with the plaintiff after the plaintiff complained that she was a racist, Id. at 591. The Eighth Circuit affirmed summary judgment for the defendant in that case, holding:

> Although the record reflects she had a personality conflict with Kohn, there is nothing to suggest this conflict created a situation so unbearable or bleak that a reasonable employee would have been dissuaded from complaining about discrimination in such an environment.

Higgins v. Gonzales, 481 F.3d at 590. The Eighth Circuit held that a Title VII plaintiff cannot make retaliation claims "based on personality conflicts, bad manners, or petty slights and snubs." Id. at 591. "What is absent from the record is evidence showing [the supervisor's] anger and related actions materially and adversely affected [plaintiff's] life such that a reasonable employee in [plaintiff's] shoes would be dissuaded from complaining." Id.

Plaintiff here likewise cannot make out a prima facie case of retaliation. His supervisor's conduct is alleged to have been the same from the beginning, prior to plaintiff engaging in any protected activity. Plaintiff cannot show any action on the part of Hofmann which was materially adverse after plaintiff engaged in protected activity. Indeed, plaintiff claims merely that Hofmann continued his alleged previous "hostile" behavior after plaintiff participated in the EEO process.

Title VII provides a cause of action for discrimination "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). It must be assumed that the claimed conduct of Hofmann was unwelcome. It is not to be

assumed that the claimed harassment was based on plaintiff engaging in protected activity and that is a requirement to support recovery for harassment under Title VII. Hall v. Gus Constr. Co., 842 F.2d 1010, 1013 (8th Cir. 1988). Plaintiff cannot make out a prima facie case that any action on the part of Hofmann was causally linked to plaintiff's participation in protected activity. It is clear from the record that Hofmann's treatment of plaintiff did not materially change from October 2004 to mid-2006. Indeed, it is alleged by the plaintiff that Hofmann's conduct toward all the employees he supervised was the same, both before and after plaintiff engaged in protected activity. In any event, the record is clear that Hofmann was working on a notice of removal of plaintiff from his position as early as June 2005, well before plaintiff engaged in protected activity. "Evidence of an employer's concerns about an employee's performance before the employee's protected activity undercuts a finding of causation." Kasper v. Federated Mut. Ins. Co., 425 F.3d 496, 504 (8th Cir.2005).

> And "post-hoc complaints did not without more raise a retaliation bar to the proposed discipline because 'the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace.' Indeed, complaining of discrimination in response to a charge of workplace misconduct is an abuse of the anti-retaliation remedy." Griffith v. City of Des Moines, 387 F.3d 733, 738 (8th Cir.2004).

Carrington v. City of Des Moines, Iowa, 481 F.3d 1046, 1051 (8th Cir. 2007).

We know that "the further in proximity the [employment action] is from the protected activity, the less suspect the decision . . . becomes." E.E.O.C. v. Kohler Co., 335 F.3d 766 (8th Cir. 2003) (citing Kipp v. Missouri Highway and Transp. Comm'n, 280 F.3d 893 (8th Cir. 2002)). In the latter cited case, the Eighth Circuit determined that approximately eight weeks was long enough to dilute any inference of a causal link between the complaint and termination. Id. at 898. Plaintiff cannot show that any action on the part of Hofmann was causally linked to participating in EEO activities. The actions of Hofmann were also not "materially adverse." There are no genuine issues of material fact and a summary judgment should be entered in favor of defendant and against plaintiff.

**ORDER**

Now, therefore, based on the foregoing,

IT IS ORDERED that defendant's motion, Doc. 16, is granted. Judgment is entered in favor of defendant on all claims. Costs shall be taxed. The telephonic hearing set for December 29 is cancelled.

Dated this 9th day of December, 2008.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Barbara J. Gappe
DEPUTY
(SEAL)